RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0087p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

PAMELA GILLIE; HAZEL MEADOWS,

        *Plaintiffs-Appellants*,

    *v.*

LAW OFFICE OF ERIC A. JONES, LLC; ERIC A. JONES;
WILES, BOYLE, BURKHOLDER & BRINGARDNER CO.,
LPA; MARK JEFFREY SHERIFF; SARAH SHERIFF,

        *Defendants-Appellees*,

OHIO ATTORNEY GENERAL,

        *Intervenor-Appellee*.

No. 14-3836

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:13-cv-00212—James L. Graham, District Judge.

Argued: March 3, 2015

Decided and Filed: May 8, 2015

Before: CLAY, GILMAN, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** James E. Nobile, NOBILE & THOMPSON CO., L.P.A., Hilliard, Ohio, for Appellants. Christopher P. Conomy, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Intervenor-Appellee. Boyd W. Gentry, LAW OFFICE OF BOYD W. GENTRY, LLC, Beavercreek, Ohio, for Jones Appellees. Michael L. Close, ISAAC WILES BURKHOLDER & TEETOR, Columbus, Ohio, for Appellees Wiles and Sheriff. **ON BRIEF:** James E. Nobile, Eric E. Willison, NOBILE & THOMPSON CO., LPA, Hilliard, Ohio, for Appellants. Christopher P. Conomy, Sherry M. Phillips, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Intervenor-Appellee. Boyd W. Gentry, LAW OFFICE OF BOYD W. GENTRY, LLC, Beavercreek, Ohio, for Jones Appellees. Michael L. Close, Dale D. Cook, ISAAC WILES BURKHOLDER & TEETOR, Columbus, Ohio, for Appellees Wiles and Sheriff.

CLAY, J., delivered the opinion of the court in which GILMAN, J., joined.  SUTTON, J. (pp. 25–37), delivered a separate dissenting opinion.

––––––––––––––––––––

**OPINION**

––––––––––––––––––––

CLAY, Circuit Judge.  Plaintiffs Pamela Gillie and Hazel Meadows appeal the district court order entering summary judgment in favor of Defendants Eric A. Jones; the Law Office of Eric A. Jones, LLC ("Jones Law Office"); Mark J. Sheriff; Sarah Sheriff; and Wiles, Boyle, Burkholder & Bringardner Co., LPA ("Wiles Law Firm").  Plaintiffs brought this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, alleging that Defendants utilized a deceptive, misleading, or false representation or means in attempting to collect consumer debts Plaintiffs owed to entities owned and operated by the State of Ohio.  The Attorney General intervened on behalf of Defendants, asserting that the alleged misrepresentation—consisting of sending debt-collection notices on the Attorney General's letterhead—was not a misrepresentation at all and was, in fact, authorized by the Attorney General.  The district court found that Defendants were exempt from FDCPA coverage as "officers" of the State of Ohio; and that, in any event, their use of the Attorney General's letterhead did not violate the FDCPA.

For the reasons set forth below, we **VACATE** the summary judgment in favor of Defendants and **REMAND** this case to the district court for further proceedings consistent with this opinion.

**BACKGROUND**

On September 20, 1977, Congress enacted the Fair Debt Collection Practices Act, Pub. L. 95-109, 91 Stat. 874 (codified at 15 U.S.C. 1692 *et seq.*), as Title VIII of the Consumer Credit Protection Act.  Abusive debt collection practices were at the time, and remain today,[1] a "serious

––––––––––––––––––––

[1] *See* Press Release, FTC, New York Attorney General Crack Down on Abusive Debt Collectors (Feb. 26, 2015), *available at* https://www.ftc.gov/news-events/press-releases/2015/02/ftc-new-york-attorney-general-crack-down-abusive-debt-collectors; Rebecca Thiess & Ellen Taverna, *Cleaning Up Debt Collection: New rules are*

national problem" that "touches the lives of many Americans."  S. Rep. No. 95-382, at 2 (1977).[2]
The FDCPA specifically sought to target all "third party" and "independent debt collectors,"
whom the Senate cited as "the prime source of egregious collection practices."  *Id.*  The Senate's
contention was that independent debt collectors have little incentive to act fairly, given that they
"are likely to have no future contact with the consumer and often are unconcerned with the
consumer's opinion of them."  *Id.* at 2.  Moreover, the independent collector's commissions-
based incentive to collect as many debts as possible is problematic, because it increases the
likelihood of abusive collection practices.  *Id.*  The same concerns, however, are not present for
"in house collectors," who were to be excluded from the FDCPA's broad definition of the term
"debt collector."  *Id.* at 3 (internal quotation marks omitted).  "Government officials, such as
marshals and sheriffs," were offered by the Senate as the lone example of "in house" collectors
working in the public sector.  *Id.* at 3.  The statutory language ultimately adopted for this
exemption excluded from the definition of debt collector, "any officer or employee of . . . any
State to the extent that collecting or attempting to collect any debt is in the performance of his
official duties."  15 U.S.C. § 1692a(6)(C).  This language remains the only exemption for state
actors.  The term "debt collector," from which these state actors are exempted, was ultimately
defined as "any person . . . who regularly collects or attempts to collect, directly or indirectly,
debts owed or due or asserted to be owed or due another."  § 1692a(6).  The overwhelming
breadth of this provision is fitting, given Congress's intent to extinguish all abusive debt
collection practices.  One of these practices consisted of independent debt collectors
"misrepresenting" that they were, in fact, "government official[s]."  S. Rep. No. 95-382, at 8
(1977).  This concern, along with the issue of who would qualify for the state sector exemption,
are among the issues we address in this opinion.

---

*necessary to end abusive debt collection practices*, U.S. News (Mar. 24, 2014, 10:45 a.m. EDT),
http://www.usnews.com/opinion/economic-intelligence/2014/03/24/the-consumer-protection-bureau-should-end-
abusive-debt-collection.

　　[2]This is the final committee report that was presented with the legislation before its enactment.

**Special Counsel and the Ohio Attorney General**

Title I, Chapter 131, of the Ohio Revised Code governs the collection of debts[3] owed to the State of Ohio. These debts include unpaid taxes, overdue fees on governmental services, and administrative fines, as well as consumer debts arising from transactions with various State-owned entities (*e.g.*, overdue tuition from a State university or unpaid medical bills from a State hospital). This case is about consumer debts. Debts that remain uncollected by the State entity to whom the debt is owed are eventually "certified" to the Office of the Ohio Attorney General ("OAG"). Ohio Rev. Code § 131.02(A). The Attorney General is thereafter responsible for collecting the debt or disposing of it by other means (*e.g.*, securing a judgment, selling or transferring the claim on the debt, or causing the debt to be canceled). §§ 131.02(C), (F).

The Attorney General is not personally required to collect the debts certified to the OAG. Section 109.08 of the Ohio Revised Code provides that the Attorney General may enlist "special counsel" to collect debts on the Attorney General's behalf. The statute reads in full:

> The attorney general may appoint special counsel to represent the state in connection with all claims of whatsoever nature which are certified to the attorney general for collection under any law or which the attorney general is authorized to collect.
>
> Such special counsel shall be paid for their services from funds collected by them in an amount approved by the attorney general.
>
> The attorney general shall provide to the special counsel appointed to represent the state in connection with claims arising out of [specific tax debts] the official letterhead stationery of the attorney general. The special counsel shall use the letterhead stationery, but only in connection with the collection of such claims arising out of those taxes.

Ohio Rev. Code § 109.08.

Special counsel receive their appointment by submitting a successful response to a Request for Qualifications. Once selected, they enter into a "retention agreement" with the Attorney General that defines the scope of their engagement.

The retention agreement contains a few provisions that are germane to this dispute. First, actions taken by special counsel are only authorized by and through the retention agreement and

---

[3]These debts are generally referred to as "claims" throughout the Ohio Revised Code.

only for its duration.  (R. 48-8, 2013 Retention Agreement, PageID # 634 ("No services rendered by Special Counsel after the date of Termination shall be authorized or payable without an additional agreement from the Attorney General.")).  Second, "Special Counsel shall be engaged by the Attorney General solely on an independent contractor basis."  (*Id.* at PageID # 635 ("No Special Counsel . . . shall be regarded as in the employment, or as an employee of, the Attorney General or the State Clients.")).  Third, "the appointment of Special Counsel is personal in nature and does not extend to any law firm that the Special Counsel is associated with."  (*Id.* at PageID # 634).  Fourth, claims are assigned to special counsel; however, all collections must be forwarded and endorsed to the Attorney General before the special counsel is entitled to receive a percentage of the collections-based fee.  Fifth, the retention agreement requires special counsel to "comply with the same standards of behavior as set forth in  . . . the Fair Debt Collection Practices Act."  (*Id.* at PageID # 646).  In addition to these provisions, though not in the agreement, special counsel have been orally directed by the Attorney General to utilize OAG letterhead in connection with all collections (including consumer debts, even though it is contrary to Ohio's code[4]).

On April 13, 2012, the OAG announced a "Request for Qualifications for Special Counsel of Fiscal Year 2013" ("RFQ").  (R. 48-11, Jones Response to RFQ, PageID # 658).  The RFQ solicited responses from qualified attorneys who wished to enter into a contract to perform debt collection on behalf of the state.  The relationship would be "defined by contract" and the "appointment" would "only become effective upon execution of [the] Retention Agreement." (*Id.* at PageID # 661, 663).

Defendant Mark J. Sheriff submitted a response to the RFQ on May 1, 2012.  Sheriff, a partner at Wiles Law Firm, had previously been appointed as a special counsel.  Sarah Sheriff also worked for Defendant Wiles Law Firm at the time under the direction of Mark Sheriff. Defendant Eric A. Jones submitted a response to the RFQ on May 2, 2012.  Jones, who owned and operated Defendant Jones Law Office, had likewise served as a special counsel in previous years.  Sheriff and Jones became special counsel to the Attorney General for fiscal year 2013

---

[4]"The special counsel shall use the letterhead stationery, *but only in connection with* the collection of such claims arising out of those *taxes*." Ohio Rev. Code § 109.08 (emphasis added).

upon the execution of the retention agreements they received, following their selection based on their respective responses to the RFQ.

On May 24, 2012, Plaintiff Pamela Gillie was engaged in bankruptcy proceedings when she received a debt collection letter from Jones.  The collection letter was written on OAG letterhead, which included both an image of the Great Seal of the State of Ohio and the Attorney General's name—Mike DeWine—in large font at the top of the page.  The letter stated: "Dear Sir/Madam, You have chosen to ignore repeated attempts to resolving the referenced . . . medical claim.  If you cannot make immediate full payment call DENISE HALL at Eric A. Jones, L.L.C. . . . at my office to make arrangements to pay this debt." (R. 48-2, Jones Collection Ltr., PageID # 611).  The next paragraph of the letter continued in bold capital font, "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR."  (*Id.*)  The signature block read "Eric A. Jones Outside Counsel for the Attorney General's Office," and the return payment stub provided that payments should be made to the Law Office of Eric A. Jones, L.L.C.  (*Id.* at PageID # 611–12).  The notice did not specifically identify the original creditor or the date on which the debt was incurred.  Gillie thought that it might have been related to her pregnancy.  She believed that the letter was from the Attorney General but the inclusion of the other names confused her.

On July 20, 2012, Plaintiff Hazel Meadows received a debt collection letter from Sarah Sheriff with Wiles Law Firm.  The letter used OAG letterhead for the "Collections Enforcement Section" and likewise included an image of Ohio's Great Seal.  (R. 48-4, Wiles Collection Ltr., PageID # 614).  The body of the letter read, "Sir/Madam: Per your request, this is a letter with the current balance owed for your University of Akron loan that has been placed with the Ohio Attorney General.  Feel free to contact me . . . should you have any further questions." (*Id.*)  It was signed by Sarah Sheriff and the signature block noted her association with Wiles Law Firm and indicated that she was "Special Counsel to the Attorney General."  (*Id.*)  It was also noted in the letter that the sender was a debt collector.  Meadows was confused by the letter and did not recall "ever asking anyone for any information" about her debts.  (R. 48-3, Meadows Affidavit, PageID # 612).  Sarah Sheriff averred, however, that the letter was drafted in response to a phone call and that Meadows could not have been confused because she had previously made payment on the same debt after entering into an agreed judgment and payment plan on March 6, 2008.

Plaintiffs filed this suit on March 5, 2013, alleging that Defendants violated various provisions of the FDCPA by utilizing the OAG letterhead. The Attorney General thereafter successfully moved to intervene as Defendant and Counterclaimant. On September 6, 2013, the district court stayed discovery and ordered briefing to determine whether the issues of liability and damages should be bifurcated. Bifurcation was ordered on December 4, 2013, to delay a costly class-certification process until the court could decide the two legal issues presented: whether "special counsel" are debt collectors under the FDCPA and whether the use of letterhead from the Office of the Attorney General by special counsel violates the FDCPA. The district court also continued the stay of discovery and ordered the filing of dispositive motions within sixty days.

Plaintiffs and Defendants filed opposing motions for summary judgment and made appropriate responses. The Attorney General also moved for a judgment on the pleadings, and Plaintiffs moved to dismiss the Attorney General's counter-complaint for failure to state a claim. The district court granted Defendants' motions for summary judgment, denied the Attorney General's motion for judgment on the pleadings, denied Plaintiffs' motion for summary judgment, and denied as moot Plaintiffs' motion to dismiss for failure to state a claim. The court first held that special counsel are not "debt collectors" within the meaning of the FDCPA because they are officers of the State of Ohio, and state officers are explicitly exempt from FDCPA coverage. The court then went on to determine that, even if special counsel did fall within the definition of a "debt collector," use of OAG letterhead was not a "false, deceptive or misleading" communication in violation of 15 U.S.C. § 1692e. This appeal followed.

## DISCUSSION

### Standard of Review

We review *de novo* an appeal from an order granting summary judgment. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004). Summary judgment should be granted when there exists no genuine dispute of material fact and, in light of the facts presented, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The court may look to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" when ruling on the motion. *Id.* The facts must be viewed in the light most favorable

to the non-moving party and all reasonable inferences shall be afforded to those facts. *Combs*, 354 F.3d at 576–77. But, a mere "scintilla of evidence" that militates against the clear weight of the evidence in the record does not create a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## Analysis

### I.     "Debt Collectors" and the "Officer or Employee" Exemption

The FDCPA was enacted to prevent "abusive debt collection practices" and ensure that those debt collectors who fairly engage in the practice of debt collecting "are not competitively disadvantaged" by their peers' malfeasance. 15 U.S.C. § 1692. A "debt collector" is "any person . . . who regularly collects or attempts to collect . . . debts owed or . . . due another" for profit. § 1692a(6). Any individual qualifying as an "officer or employee" of a state is excluded from this definition if attempting to collect debts "in the performance of his official duties." § 1692a(6)(C).

The issue before us is controlled by the scope of the term "officer." Specifically, we must determine whether private attorneys "appointed" as "special counsel" to the Ohio Attorney General, but operating as independent contractors, are officers of a state, within the meaning of the FDCPA. We think not. The use of the word "appoint" in reference to "hiring" independent contractors is not decisive. Special counsel, in truth, are indistinguishable from the myriad of independent contractors who enter into for-profit agreements with government agencies or actors to help fulfill the duties of some government office. The FDCA is a broad remedial statute, *Frey v. Gangwish*, 970 F.2d 1516, 1520 (1992), with limited, clearly defined exceptions. We find no justification for diluting its protection by broadly interpreting the term "officer or employee" to include independent contractors.

### A.     The Dictionary Act

When a statutory term is left undefined by Congress, we first turn to the Dictionary Act, which offers definitions for words that are commonly used throughout Acts of Congress. *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2768 (2014). "Officer" is one of those words; and we must adhere to the Dictionary Act definition, "unless the context indicates

otherwise." 1 U.S.C. § 1. Both sides insist that our judgment should be guided by extra-statutory considerations: Plaintiffs posit that we infer legislative intent as to the scope of the exclusion by looking to principles of sovereign immunity;[5] whereas the Attorney General stresses the importance of federalism and a state's ability to determine the organization of its own government. "[T]he qualification 'unless the context indicates otherwise' has a real job to do, in excusing the court from forcing a square peg into a round hole." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 200 (1993). But we have not been stuck with a square peg. The Dictionary Act provides a specific definition for the present occasion that comports with our common understanding of the word "officer," and leads to a result that is consistent with the purpose of the FDCPA.

We review *de novo* the interpretation of statutory language. *RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 384 (6th Cir. 2014). When the language of a statute is clear we must apply its plain meaning. *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1999*, 708 F.3d 737, 723 (6th Cir. 2013).

An "officer" "includes any person authorized by law to perform the duties of the office." 1 U.S.C. § 1. Defendants contend that "special counsel" easily fall within this definition by operation of the following Ohio statutes: § 109.08, authorizing the Attorney General to appoint special counsel to collect debts; and § 131.02, assigning the Attorney General responsibility over the collection of debts owed to the State. The difficulty with Defendants' arguments is that these statutes do not authorize special counsel to fulfill the duties of any office. Our focus is drawn to the following words: "authorized by law" and "the duties of the office." We consider each phrase in turn.

---

[5]Debt collection companies that win government contracts pursuant to a statutory authorization are not entitled to sovereign immunity. *Rosario v. Am. Corrective Counseling Servs.*, 506 F.3d 1039 (11th Cir. 2007); *Del Campo v. Kennedy*, 517 F.3d 1070 (9th Cir. 2008). Special counsel, likewise, are not entitled to sovereign immunity because of their independent-contractor status and indemnification of the OAG. *See Brotherton v. Cleveland*, 173 F.3d 552, 560 (6th Cir. 1999) (listing four factors for the court to consider; indemnification being the most salient); *cf. Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 51 n.21 ("It would indeed heighten a mystery of legal evolution were we to spread an Eleventh Amendment cover over an agency that consumes no state revenues but contributes to the State's wealth." (internal quotation marks omitted)).

### 1.    Authorized by Law

Although it is true that special counsel are authorized to collect certain debts assigned to them on behalf of the Attorney General, they are not authorized to do so by law.  The Attorney General contends that § 109.08—bearing the title "special counsel to collect debts"—provides such an authorization.  But this argument is specious.  Our analysis must be guided by parsing the meat and bones of the statute, not simply by surveying its skin.  Section 109.08, which is broken into four sentences, primarily governs the conduct of the Attorney General, and not that of special counsel.  First, the statute authorizes the Attorney General to employ *or* contract with individuals selected by the Attorney General to act as special counsel for the purpose of collecting debts certified to the OAG.  Second, it authorizes the Attorney General to set the pay of special counsel, which must be allocated only from funds that special counsel themselves have collected.  Third, § 109.08 requires the Attorney General to provide OAG letterhead to any special counsel assigned to collect specific tax debts.  The fourth sentence, "The special counsel shall use the letterhead stationery, *but only in connection with* the collection of such claims arising out of those *taxes*," is the only provision of the statute that grants any authority to special counsel.  Ohio Rev. Code § 109.08 (emphasis added).  This provision not only fails to authorize any collections activity, it restricts the manner in which collections may occur should any collections actually be authorized or assigned by the Attorney General.[6]  Section 109.08 simply establishes the framework under which the Attorney General, within his or her discretion, may delegate the collection of debts to a third-party debt collector.  Authorization to actually act as an officer of a state requires more.  Such an authorization entails the actual capability to act, not merely the prospect of a future delegation.  *See Authorize* and *Authority*, BLACK'S LAW DICTIONARY (10th Ed. 2014) [hereinafter "BLACK'S"] (to authorize is "to give legal authority," which means "the power delegated by a principal to an agent").

We find no difficulty in determining the source of special counsel's authority.  The RFQ emphasized that an appointment as special counsel would "only become effective upon execution of a Retention Agreement," and that any relationship with the OAG would exclusively

---

[6]The Attorney General's insistence that special counsel violate this restriction is the basis for this action.  Taxes owed to a state are not debts under the FDCPA.  The legislature's failure to specifically endorse the use of OAG letterhead by special counsel in the collection of consumer debts supports an inference that the state understood special counsel to be independent debt collectors and not entitled to use government letterhead.

be "defined by contract."  (R. 48-11, Jones Response to RFQ, PageID # 661, 663).  The retention agreements themselves reiterated that "[s]pecial counsel shall be engaged by the Attorney General solely on an independent contractor basis."  (R. 48-8, 2013 Retention Agreement, PageID # 635).  Absent a contract *and* work being specifically assigned thereunder, "special counsel" is an empty title.  Finding no authority derived from this title, we cannot say that special counsel are "authorized by law" to perform any duties.  They are instead authorized only by contract with the OAG.

The Attorney General suggests that "a fair reading of 'authorized by law' means simply that it was lawful for the Attorney General to direct that [s]pecial [c]ounsel perform duties of the Attorney General's office."  This interpretation is obviously flawed.  The Attorney General has numerous duties, many of which are lawfully delegated by necessity to his staff at the OAG, not all of whom are officers.  A narrower reading of the Attorney General's interpretation could be that only those delegations that are specifically contemplated by statute qualify as being authorized by law.  However, as explained above, only an actual delegation (not one that is merely contemplated) falls within the ordinary meaning of the word "authorized."  We are left only with the Attorney General's contracting authority to support the Attorney General's position.  But the phrase "authorized by law" cannot be construed so as to include all duties and responsibilities entrusted by contract to an independent contractor.  To hold otherwise would invite a preposterous result—bestowing officer status under the Dictionary Act on every independent contractor working on behalf of a state.[7]  This cannot be the case.  "Interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."  *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 432 (6th Cir. 2012) (internal quotation marks omitted).

---

[7]In Ohio, for example, the Facilities Construction Commission and its Executive Director are tasked with "general supervision over the construction of any projects, improvements, or public buildings constructed for a state agency."  Ohio Rev. Code § 123.21(2).  The Executive Director, like the Attorney General, is authorized by statute to engage independent contractors to undertake functions specifically prescribed by statute to his or her office.  § 123.21(3).  Under the Attorney General's interpretation of the Dictionary Act, every independent contractor working on a construction project for a state agency in the State of Ohio would be an officer of the state.

### 2.    "The Duties" of the Office

Turning from "authorized by law," we find another reason to disqualify special counsel as officers under the plain meaning of the Dictionary Act.  Mainly, that special counsel *do not* perform "the duties" of any office.  The use of the definite article preceding both "duties" and "office" in the Dictionary Act's definition restricts our interpretation of that language.  "[T]he word 'the' frequently (but not always) indicates 'a particular thing.'"  *NLRB v. Noel Canning*, 573 U.S. ___, 134 S. Ct. 2550, 2561 (2014).  It can also be used to refer to something generically, *id.*, as may be the case with "*the* office."  By way of example, officers include any person authorized by law to perform the duties of the office *in question*—which could be the Office of Attorney General *or* some other public office.  However, the word "the" that precedes "duties" has only one sensible construction—that it refers to a specific thing—*all duties* associated with the office in question.  It would be unreasonable to construe "the," in that instance, to mean "a," "some" or "any."  *See, e.g.*, *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014) ("It is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." (internal quotation marks omitted)); *Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2042 (2012) ("And it is normal usage that, in the absence of contrary indication, governs our interpretation of texts.").

Special counsel qualify as officers only if they are entitled to perform all duties of some public office.[8]  But special counsel are not so entitled.  Special counsel cannot perform all duties of the Attorney General's office; nor are they associated with any other public office.[9]  A "public office" is "[a] position whose occupant has legal authority to exercise government's *sovereign powers* for a fixed period."  *Public Office*, BLACK'S (emphasis added). The authority to collect consumer debts is not a sovereign power; instead, it is a right that can be exercised by any creditor.  *See Sovereign Power*, BLACK'S ("The power to make and enforce laws."); *Sovereign Right*, BLACK'S ("A unique right possessed by a state or its agencies that enables it to carry out

---

[8]This interpretation is also consistent with the common understanding of the term "officer."  *See Officer*, BLACK'S ("In public affairs, the term refers esp. to a person holding public office under a national, state, or local government and authorized by that government to exercise some specific function.").

[9]The Attorney General has conceded that there is no legislatively designated office of special counsel.

its official functions for the public benefit, as distinguished from certain proprietary rights that it may possess like any other private person.").  Without a legislatively designated office or the authority to exercise sovereign powers, special counsel are not officers of the State.

### B.      Officers, Appointment, and Independent Contractors, Generally

Even if the Dictionary Act were inapplicable to this case, our conclusion would be the same.  The Attorney General has attributed special weight to the word "appoint," which it is not due.  For reasons known only to the legislature, all of the Attorney General's employees are appointed.  *See* Ohio Rev. Code § 109.05 ("The attorney general may *appoint* such employees as are necessary." (emphasis added)).  Once we remove this guise as the basis for special counsel's authority, the resolution of this issue is readily apparent.  The salient distinction between special counsel and the Attorney General's employees, who are also appointed, is special counsel's independent-contractor status.   The overwhelming weight of authority sensibly finds that independent contractors are not exempt from FDCPA coverage as officers or employees, pursuant to 15 U.S.C. § 1692a(6)(C).  *See, e.g.*, *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1263 (9th Cir. 1996) ("This exemption applies only to an individual government official or employee who collects debts as part of his government employment responsibilities. [The contractor] is a private nonprofit organization with a government contract . . . ."); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 406 (3d Cir. 2000) ("The exemption expressly is limited to 'any officer or employee of the United States or any State' . . . . [And, it] does not extend to those who are merely in a contractual relationship with the government."); *see also Piper v. Portnoff Law Assocs.*, 274 F. Supp. 2d 681, 688 (E.D. Pa. 2003) ("Because the defendants are in a contractual relationship with the City . . . , the municipal officers' exemption does not extend to them."); *Gradisher v. Check Enforcement Unit, Inc.*, 133 F. Supp. 2d 988, 992 (W.D. Mich. 2001) ("This Court agrees with *Brannan* and *Pollice* that an independent contractor is not entitled to an exemption to the FDCPA pursuant to 15 U.S.C. § 1692a(6)(C)."); *Knight v. Schulman*, 102 F. Supp. 2d 867, 876 (S.D. Ohio 1999) ("Since the Defendant was an attorney in private practice, rather than an officer or employee of the United States, he is not excluded from the definition of debt collector, regardless of whether the Defendant was acting as an agent of the United States at the time the letters . . . were written.").

Quite simply, "[t]he legal question raised . . . is whether someone who has been appointed as special counsel to the attorney general is properly characterized as a state officer or employee *or* as an independent contractor." *Keefer v. Wiles, Boyle, Burkholder & Bringardner, Co., LPA*, Nos. 2:07-CV-1205, 2:07-CV-1288, 2008 WL 4404295, at *3 (S.D. Ohio Sept. 23, 2008) (emphasis added). The Attorney General has legally distanced himself and the OAG from special counsel so that the State of Ohio does not suffer the negative consequences of special counsel's actions. Now, he wishes to see that special counsel get treated as if they are officers of the State of Ohio, directly under his supervision. The Attorney General cannot have it both ways; special counsel are *not* officers or employees simply because they *are* independent contractors. No court has held otherwise.[10]

## C.    Federalism and Policy Concerns

The Attorney General seeks to frame this case as a matter of federalism, fundamentally insisting that Congress should have explicitly legislated that an independent contractor is incapable of being an "officer or employee" of the state. For legal authority, the Attorney General points to *Gregory v. Ashcroft* and the "plain statement" rule. *See* 501 U.S. 452, 460 (1991) ("If Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." (internal quotation marks omitted)). This case is about third-party debt collectors. Ohio is not being regulated; nor is the structure of its government being challenged.

Contrary to Defendants' assertions, special counsel also fail to qualify as officers of the State under Ohio's own laws. Section 109.36(A)(1) of the Ohio Revised Code defines an

---

[10]Defendants point to a few cases for support, but they are inapposite. In *Bell v. Newnham*, No. L-89-373, 1990 WL 131972, at *2 (Ohio Ct. App. Sept. 14, 1990), the Ohio Court of Appeals held that special counsel was "acting . . . under color of [state] law" for the purposes of a § 1983 suit. The court relied on the fact that the plaintiff had sued special counsel "in his capacity as a state officer or employee," but the court never analyzed the validity of this assumption. Whether or not special counsel were "officers or employees" is insignificant in the § 1983 context, where it is widely accepted that independent contractors may act under color of law. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) ("To act under color of law does not require that the accused be an officer of the State." (internal quotation marks omitted)). Similarly in *Berridge v. Heiser*, 993 F. Supp. 1136, 1143 (S.D. Ohio 1997), the court found that special counsel could be sued under § 1983 if "acting under color of state law." Finally, in *Heredia v. Green*, 667 F.2d 392 (3d Cir. 1981), the Third Circuit found that the defendant was a state officer exempt from FDCPA coverage because he had been appointed a Landlord and Tenant Officer of the court. Like special counsel, the defendant was charged with serving debt notices. Unlike special counsel, the Landlord and Tenant Officer position was prescribed duties by statute and the holder of the position was not in an independent contractual relationship for the purpose of collecting debts. *See id.* at n.3.

"[o]fficer or employee" as "[a] person who . . . is serving in an elected or appointed office or position with the state or is employed by the state." Defendants conclude that special counsel must be officers because they are "appointed" pursuant to § 109.08 to a "position with the state." Again, the use of the word "appoint" is overstated. The Supreme Court of Ohio itself has recognized that courts should not "read so much into the . . . word 'appointment' because . . . the more significant words in [the statutory definition of 'officer or employee'] are 'office or position with the state.'" *Engel v. Univ. of Toledo Coll. of Med.*, 130 Ohio St. 3d 263, 267 ¶ 18 (2011).[11] The court elaborated by noting that a "public officer . . . *must* possess some *sovereign functions* of government to be exercised by him for the benefit of the public either of an executive, legislative, or judicial character." *Id.* at ¶ 19 (internal quotation marks omitted) (emphasis added); *accord Solowitch v. Bennett*, 456 N.E.2d 562, 566 (Ohio Ct. App. 1982) ("The chief and most decisive characteristic of a public office is determined by the quality of the duties with which the appointee is invested . . . . If official duties are prescribed by statute, and their performance involves the exercise of continuing independent, political or governmental functions, then the position is a public office." (internal quotation marks omitted)). Special counsel exercise neither "sovereign functions" nor "independent, political or governmental functions." Nor are they prescribed by statute any "powers and duties," as is common throughout the code.[12]

Another fair reading of Ohio's "officer or employee" statute is that only individuals "serving in an elected or appointed *office*" qualify as an officer, whereas those "serving in an . . . appointed . . . position with the state" are merely employees.[13] Special counsel necessarily fall into a third category, independent contractors, because it appears that the legislature failed to

---

[11]Defendants attempt to distinguish this case because the use of the word "appointment" appeared in a letter as opposed to a statute (like § 109.08); however, they fail to recognize that the court specifically identified which words were most important in defining an officer of the state, pursuant to § 109.36(A)(1)—"office or position with the state."

[12]*See, e.g.*, Ohio Rev. Code § 109 (Attorney General's powers and duties); § 109.04 ("Powers and duties of first assistant attorney general"); § 109.75 ("Powers and duties of peace officer training commission executive director"); § 111.04 ("Duties of assistant secretary [of State]"); § 121.081 ("Department of insurance – powers and duties"); § 121.083 ("Superintendent of industrial compliance – powers and duties"); § 121.33 ("Office of Hispanic-Latino affairs – powers and duties"); § 121.42 ("Inspector general – powers and duties"); § 1155.011 (Superintendent and deputy superintendent for savings and loan associations and savings banks – powers and duties"); § 118.08 ("Powers, duties, and functions of financial planning and supervision commission"); § 120.04 ("State public defender – powers and duties"); § 120.15 ("County public defender – powers and duties").

[13]Special counsel has explicitly disclaimed the employee designation through contract.

distinguish between "officers" and "employees" based on the presumption that all officers are, in fact, employees of the State of Ohio. This interpretation is consistent with another provision of the code, which presumes that every officer has a State-entity employer. *See* § 109.361 ("All expenses . . . in the defense of an officer or employee shall be paid by the employer that employed the officer or employee at the time the alleged act or omission occurred."). However, the State is not special counsel's (nor any independent contractor's) employer.[14] *See Employer*, BLACK'S ("[O]ne who *controls and directs* a worker under an express or implied contract of hire and who pays the workers' salary or wages." (emphasis added)); *Independent Contractor*, BLACK'S ("Someone who is entrusted to undertake a specific project but *who is left free* to do the assigned work and to choose the method for accomplishing it . . . . *Unlike an employee*, an independent contractor who commits a wrong while carrying out the work usu[ally] does not create liability for the one who did the hiring." (emphasis added)).

If Special Counsel Defendants truly believed in their status as officers of the State of Ohio, then it begs the question why they are not now represented by the Attorney General. *See* Ohio Rev. Code § 109.361 ("Upon the receipt of a written request by an officer or employee, the attorney general . . . *shall* represent and defend the officer or employee in any civil action instituted against the officer or employee."). The answer is simple. Special counsel are not officers because they are independent contractors and not the holders of a public office. *See Advisory Opinion No. 75-016*, Ohio Ethics Commission (August 19, 1975).[15],[16]

If an actual officer or employee of the State of Ohio were collecting these debts, he or she would be exempt from FDCPA coverage. To the extent that this natural interpretation of an

---

[14] The state could have said "paid by the *agency, office, or department* that employed," or used any other language that did not suggest a specific relationship between the officers and the entity that hired them. We must presume that the Ohio legislature used the words it chose with a full understanding of their common meaning. *Beverage Distribs., Inc. v. Miller Brewing Co.*, 690 F.3d 788, 794 (6th Cir. 2012).

[15] The Ohio Ethics Commission—an independent body responsible for ethics advice and enforcement with respect to the executive branch—was specifically asked to address whether special counsel were officers of the State of Ohio pursuant to § 109.36 to advise attorneys serving as special counsel if they were subject to a state prohibition against officers receiving outside income. The Committee noted that "[s]pecial counsel of the attorney general . . . are not appointed to an office or an instrumentality of the state . . . but are rather engaged as an agent of an elected officer of the state." *Advisory Op. No. 75-016*. Nor were they employed by the state because they "are independent contractors." *Id.*

[16] Defendants also point to § 124.11(A) (Unclassified service – classified service), which lists special counsel alongside of assistant attorneys general as unclassified civil servants. This categorization is meaningless, as it also includes teachers, library staff, nurses, and volunteer firefighters, among many others who are certainly not officers.

"officer or employee," which excludes independent contractors, restricts a state's ability to organize its government, Congress did make a plain statement about a state's right to seek relief from FDCPA coverage:  the Bureau of Consumer Financial Protection is *required* to exempt all "debt collection practices within any State" that are subject to "substantially similar" requirements as under the FDCPA.  *See* 15 U.S.C. § 1692o.  If special counsel were similarly situated to officers or employees of the State of Ohio, the Ohio Attorney General could have sought an exemption under this provision of the statute.  *See* 12 C.F.R. § 1006.1 ("This subpart establishes procedures and criteria whereby states may apply to the Bureau for exemption of a class of debt collection practices with the applying state from the provisions of the [FDCPA].")

Notably, Congress did create an explicit exemption for certain private entities.  *See* 15 U.S.C. § 1692p.  The presence of this provision militates against the notion that Congress also intended to exempt independent contractors, generally, from FDCPA coverage without saying so.  *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (internal quotation marks omitted)).  Congress did not include an exemption for independent contractors similarly situated to special counsel.  We will not do so now.

Special counsel are, simply, as their contract with the Attorney General states, independent contractors.  Independent contractors are not officers or employees under the plain language of the Dictionary Act.  Nor are they officers of the State of Ohio simply because § 109.08 uses the word "appoint."  Special counsel do not hold a public office; nor do they wield any sovereign power.  The FDCPA specifically sought to regulate independent debt collectors.  Like any other independent debt collector, special counsel are paid only when they actually collect a debt.  Congress explicitly referenced this incentive as contributing to the problems attendant with independent debt collectors.  *See* S. Rep. No. 95-382, at 2 (1977) ("Collection agencies generally operate on . . . commission, and this has too often created the incentive to collect by any means.").  By finding that special counsel are subject to the FDCPA prohibitions, we are merely holding that Congress' intended target for regulation—independent debt collectors—are actually subject to the regulation.

## II.    False, Deceptive, or Misleading Acts and § 1692e Liability

Section 1692e states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This provision, along with its subsections, provides an "extraordinarily broad" base of protection to consumers, *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992), and is intended to prevent all abusive debt collection practices by independent debt collectors that tend to deceive or mislead a consumer. *See* 15 U.S.C. § 1692 ("It is the purpose of [the FDCPA] to *eliminate* abusive debt collection practices . . . ." (emphasis added)). An inherent danger posed by harassing or deceptive collection practices is that consumers will be pressed into making uninformed decisions about debt prioritization, which affects their daily lives. *See* 15 U.S.C. § 1692 ("Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs . . . ."). When the sender of a letter misrepresents his or her authority, the least sophisticated consumer might reasonably be intimidated, confused, and "feel pressured to immediately pay the debt, even if she disputed its validity." *Barany-Snyder v. Weiner*, 539 F.3d 327, 334 (6th Cir. 2008) (internal quotation marks omitted).

Intimidation is at the heart of this case. There is no compelling reason for special counsel to use the OAG letterhead, other than to misrepresent their authority and place pressure on those individuals receiving the letters. The Attorney General insists that any sense of urgency (*i.e.* intimidation) that is created by the letters is permissible because the State has special authority that a regular creditor does not. This putative authority is not cited in any brief. The Attorney General mentioned at oral argument the power to garnish wages and to withhold lottery winnings. However, these powers are precisely those powers that are granted to *all creditors* after they have received a judgment against the debtor.[17] *See* Ohio Rev. Code § 2716 *et seq.* (allowing for garnishment of wages to judgment creditors); Ohio Admin. Code § 3770:1-8-01(B)(7) (allowing for garnishment of lottery prizes for judgment creditors). Presumably, it is the lack of extraordinary powers with respect to the collection of consumer debts that causes the Attorney General to seek out special counsel with "expertise" in "the securing of judgments" and

---

[17] The Attorney General does have special powers with respect to tax debts, which are not at issue in this case. *See, e.g.*, Ohio Rev. Code § 3770.073 ("Satisfying debts to state from lottery prize awards"); § 3770.072 ("State income tax withholding and filing of report").

"post-judgment collections." (R. 48-11, Jones RFQ Response, PageID # 660); *see also* Ohio Rev. Code § 131.02(C) (listing the Attorney General's debt collection options: "The attorney general shall collect the claim *or secure a judgment . . . .*" (emphasis added)). The use of the letterhead has no apparent purpose beyond misleading a consumer into believing it is the Attorney General who is collecting on the account. But bad intentions do not result in liability under § 1692e; the debt collection practice must actually be deceptive.

The question before us, then, is whether an unsophisticated consumer could reasonably be misled into thinking she was being contacted by the Ohio Attorney General due to an independent contractor's use of OAG letterhead. If she could, we must also determine whether there is a genuine dispute of material fact as to any confusion that could be created by this debt collection practice under the particular circumstances of this case. Before we answer these questions, an overview of the liability provisions is necessary.

### A.    Liability Provisions

A debt collector violates § 1692e, put simply, if the collection practice that he uses has the tendency to confuse the least sophisticated consumer. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). This is an objective standard, with a relatively low bar so as to cast FDCPA-protection over all consumers, even those who are "gullible" or "naive." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008). However, because it is an objective standard, we will not sanction "liability for bizarre or idiosyncratic interpretations of collection notices." *Barany-Snyder*, 539 F.3d at 333 (internal quotation marks omitted). Courts must consider the question of liability in light of the FDCPA's prevailing purpose—to prevent abusive, misleading, and deceptive debt collection practices.

In addition to the general liability provision, the FDCPA enumerates sixteen specific instances of conduct deemed to be *per se* violations of § 1692e. Plaintiffs rely on two of these provisions, §§ 1692e(9) and (14). "Without limiting the general application of the foregoing, the following conduct is a violation of [§ 1692e]":

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court,

official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

. . .

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

15 U.S.C. §§ 1692e(9), (14).  Only material violations of the § 1692e prohibitions will result in liability.[18]  *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326–27 (6th Cir. 2012).  But materiality in the FDCPA context is no more than a restatement of the above-referenced standard: a false representation or act is material if it has the tendency to confuse the least sophisticated consumer.  *Id.*

### B.    OAG Letterhead and the Least Sophisticated Consumer

We must decide, given the particular facts of this case and the words written in these letters, whether the least sophisticated consumer would be misled by the use of OAG letterhead, *or*, if there is any genuine dispute of fact as to whether these letters were misleading.  *See Wallace*, 683 F.3d at 326–27.  Section 1692e(9) prohibits debt collectors from "simulat[ing]" official documents; from "falsely represent[ing]" that a communication is being "issued" by a government agent; and from distributing communications that "create[] a false impression as to its source."  Subsection (14) prohibits the use of "any . . . name other than the true name of the debt collector's business."  It is clear that these provisions were violated in the technical sense— Mike DeWine is not the true name of any Defendant, Sarah Sheriff is not a special counsel, and the official letterhead certainly implied that the letter was issued by the OAG.  But whether these misrepresentations are material requires further analysis.

Historically, special counsel's use of OAG letterhead has led to confusion.  The Attorney General admitted to receiving phone calls from consumers asking whether the letters were

---

[18]Plaintiffs suggest that materiality must be presumed under subsections (9) and (14) because those subsections describe misleading or deceptive means as opposed to false representations.  This distinction is overstated. "Materiality is an ordinary element of *any* federal claim based on a false or misleading statement." *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009) (internal quotation marks omitted) (emphasis added).  Here, we are concerned whether the means—using OAG letterhead—is making the materially false statement that the letters were, in fact, sent by the Attorney General.  Moreover, a materiality requirement is consistent with the legislative intent.  *See* S. Rep. 95-382 ("[The FDCPA's] purpose is to protect consumers from a host of unfair, harassing, and deceptive debt collection practices *without imposing unnecessary restrictions* on ethical debt collectors." (emphasis added)).

authentic, and if the consumer did in fact owe a debt to the Attorney General.  This revelation is unsurprising; many consumers might reasonably be unaware of Ohio's debt certification process and fail to understand why Ohio's chief law enforcement officer is attempting to collect from them.  Receiving a bill from a state university, which the consumer actually attended, would naturally be perceived by an average consumer, to say nothing of a naïve or gullible one, as substantially different from receiving a collection letter written on OAG letterhead.  The presence of the authoritative symbols at the top of the letter immediately signals to the debtor that it is the State of Ohio that is threatening to take action against her.  If the consumer has been deceived, he or she may be overborn, and the precise type of abuse that the FDCPA sought to eradicate has been achieved.

The letterhead is not, however, the sole representation made by these letters.  We must presume that Plaintiffs will read the entirety of the collection notice, with "a basic level of understanding . . . and care."  *Kistner*, 518 F.3d at 438–39.  Both letters included clear indications that they were sent by an attorney who was acting as a debt collector.  There was also some indication that the attorney's role as a debt collector was separate and apart from the OAG.  Defendant Jones signed the letter directed to Gillie as "Outside Counsel for the Attorney General's Office."  He also used his business address and informed Gillie to contact one of his employees at his law firm.  Likewise, Defendant Sarah Sheriff signed the Meadows letter as both an employee of Wiles Law Firm and as special counsel.  These representations may clarify the confusing impact of the letterhead for the least sophisticated consumer, or they may be overshadowed by the larger presence of the Great Seal of Ohio and the Attorney General's name.  The inclusion of the title "special counsel" in the signature block says nothing about a debt collector's relationship to the Attorney General; and the representation that a debt collector is acting as outside counsel working for a law firm does not preclude liability.  *See Peter v. GC Servs. L.P.*, 310 F.3d 344, 352 (5th Cir. 2002) (finding a violation of § 1692e(14) where a debt collector used its true name in the letter while simultaneously directing the consumer to the government's return address).  The independent debt collector may have achieved his desired impact at the point when the letter is opened and the least sophisticated consumer perceives the name of the Attorney General because the least sophisticated consumer may believe that "the price of poker has just gone up."  *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996).

Both parties, and the court below, believe that summary judgment is appropriate one way or the other, but materiality is a mixed question of law and fact. *See United States v. Gaudin*, 515 U.S. 506, 521 (1995) ("It is commonplace for the same mixed question of law and fact to be assigned to the court for one purpose, and to the jury for another."). And, often "whether a letter is misleading raises a question of fact." *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 397 (6th Cir. 2015). A letter that contains contradictory information or that tends to send a mixed signal is inherently confusing when it fails to include language that clarifies its meaning. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 309 (6th Cir. 2003). Use of the letterhead, in our view, is intended to induce a higher rate of repayment by intimating that the State of Ohio is in fact sending the letter, which may lead the naïve consumer to prioritize this debt above all others for no good reason. But intentions are not always realized and do not necessarily predict the impact of these letters on the least sophisticated consumer. It is not our role as judges to assert with certainty and without verifiable reason which individuals would or would not be misled by these letters. Therefore, we will not do so in this instance. Whether these letters did enough to clarify the initial confusion created by the use of the government letterhead is a question for the jury. *See, e.g.*, *Kistner*, 518 F.3d at 441; *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 613 (6th Cir. 2009).

The Wiles Defendants suggest that Meadows could not reasonably have been confused because she had previously entered into an agreement to pay the debt in question and the letter was sent at her request. But this contention rings hollow,[19] and regardless, would not shield Defendants from liability because Meadows did not have to allege harm or actual confusion—the FDCPA is a "strict liability statute." *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007).

Defendants also seek shelter from potential liability by way of qualified immunity, which generally shields "government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the

---

[19]The letter was generically addressed to "Sir/Madam."

rights they are alleged to have violated."[20] *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). But qualified immunity is inapplicable to an action brought directly under the FDCPA, where Congress has included an explicit exemption from debt collector liability for government officials. *Cf. Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied. . . .").[21]

The Attorney General insists that no deception has occurred in this case because special counsel and the OAG are but one and the same. But they are not.[22] The contractual relationship between special counsel and the Attorney General is no different than the relationship between any private, for profit debt collector and the creditors he or she serves. And neither a contractual relationship, nor any power of agency, nor an accurate description by special counsel of their relation to the OAG, precludes liability under the FDCPA. *See Knight v. Schulman*, 102 F. Supp. 2d 867, 876 (S.D. Ohio 1999) ("[R]egardless of whether the Defendant was acting as an agent of the United States at the time the letters . . . were written," the FDCPA applied "[s]ince [he] was an attorney in private practice, rather than an officer or employee of the United States."); *see also McMillan v. Collection Profs., Inc.*, 455 F.3d 754, 761 (7th Cir. 2006) ("[I]n some cases the literal truth may convey a misleading impression.") (internal quotation marks omitted)); *Gradisher v. Check Enforcement Unit, Inc.*, 210 F. Supp. 2d 907, 914 (W.D. Mich. 2002) ("The fact that [the defendant] had an 'affiliation' with the [government] is thus irrelevant because [the defendant's] notices created the false impression that the notices were generated by the [government].").

---

[20]Private individuals working on the behalf of the government may also seek the protection of qualified immunity, if offering such protection serves the public interest. *Filarsky v. Delia*, 132 S. Ct. 1657, 1665 (2012). But three of five Defendants—Wiles Law Firm, Jones Law Office, and Sarah Sheriff—had no relationship with the government. *See* (R. 48-8, 2013 Retention Agreement, PageID # 634) ("[T]he appointment of Special Counsel is personal in nature and does not extend to any law firm that Special Counsel is associated with.").

[21]Qualified immunity typically applies to actions brought under § 1983 or pursuant to *Bivens*. We have only extended its coverage to actions brought directly under a federal statute on a few occasions, *see, e.g.*, *Cullinan v. Abramson*, 128 F.3d 301, 312 (6th Cir. 1997) (RICO); *Blake v. Wright*, 179 F.3d 1003, 1011–12 (6th Cir. 1999) (Federal Wiretap Act), and those statutes did not include explicit exemptions for public officials.

[22]*See, e.g.*, (R. 48-8, Retention Agreement, PageID # 634–35) ("No Special Counsel . . . shall be regarded as in the employment of, or as an employee of, the Attorney General or the State Clients"; "Special counsel shall be engaged by the Attorney General solely on an independent contractor basis"; "Special Counsel shall, at its own expense, procure and maintain, during the term of this Agreement, malpractice insurance"; "Special Counsel agrees to indemnify and to hold the Attorney General and the State of Ohio harmless and immune from any and all claims for injury or damages arising from this Retention Agreement that are attributable to Special Counsel's own actions or omissions  or those of his/her partners, associates . . . .").

Special counsel had an affirmative duty as debt collectors to abide by the provisions of the FDCPA.  The FDCA prohibits, as a *per se* deception, the false implication that a collection notice is being sent by a government actor.  This deception may inappropriately influence a consumer's decisions by inducing prompt payment, regardless of the debtor's circumstances or the accuracy of the alleged indebtedness.  That an OAG employee could attain the same leverage against the alleged debtor is not at issue in this case—employees and officers of a state are exempt from the FDCPA.  Whether or not the use of the letterhead by special counsel was compelled by the OAG, a jury could reasonably find that special counsel's use of the letterhead is confusing; and therefore a violation of § 1692e, as a materially false, deceptive and misleading practice.  We recognize the importance of a state's ability to collect on its own accounts, but once it has assigned debts to an independent, third-party debt collector, the federal rules apply.  That is what happened in this case.  And special counsel are liable if a jury finds that they have held themselves out as something they are not.

## CONCLUSION

Because a jury could reasonably find that the use of the Ohio Attorney General's letterhead by the "special counsel" acting as independent debt collectors, in the manner and under the circumstances present here, to result in deceptive, misleading and false representations in violation of the Fair Debt Collection Practices Act, we hereby **VACATE** the summary judgment in favor of Defendants and **REMAND** this case to the district court with instructions for the district court to submit to the jury the question as to whether these letters were actually confusing to the least sophisticated consumer.

————————————

## DISSENT

————————————

SUTTON, Circuit Judge, dissenting.  From the founding, the States have taken debts—whether owed by them or to them—seriously.  *Compare Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419 (1793), *with* U.S. Const. amend. XI.  If States have the sovereign right to set the terms of being sued, *see Alden v. Maine*, 527 U.S. 706, 715–27 (1999), they assuredly have a sovereign right to determine how, when, and whether to collect the myriad debts owed to them.  No State to our knowledge employs all of the individuals needed to perform this sovereign function.  *See* Nat'l Ass'n of State Auditors, Comptrollers, and Treasurers, *Government Debt Collection: Survey Report and Recommendations* 1–2 (2010), *available at* http://goo.gl/kO7GQ9.  The States as a result hire other agents to collect the debts for them.  In the State of Ohio, that means the Attorney General hires private lawyers—called "special counsel"—to collect debts on his behalf, to file and settle debt-collection lawsuits with his permission, and to serve at his pleasure.  These lawyers become the Attorney General's agents for debt-collection purposes, just as the employees in the Collections Enforcement Section of the Attorney General's Office serve as his agents for these purposes, and together all of them are authorized to stand in his place when recovering the State's money.

Plaintiffs filed this class action against the State's special counsel under the Fair Debt Collection Practices Act, claiming that their debt collection letters were "false and misleading" because they used stationery with the Ohio Attorney General's name on it.  That claim has two serious flaws.  One is that the Act exempts state "officers" from its coverage.  Under the Dictionary Act and the clear-statement rule established by *Gregory v. Ashcroft*, 501 U.S. 452 (1991), the deputizing of private lawyers to act as assistant attorneys general makes them "officers" of the State for these collection purposes.  Any other interpretation would mean that Congress meant to micromanage how a State structured its law-enforcement and debt-collection efforts and would create grave constitutional concerns along the way.  The other flaw is that the special counsels' use of the Ohio Attorney General's stationery and the accurate description of their relationship with the State are not "false and misleading" under the statute.  The stationery,

which the Attorney General *requires* each special counsel to use, accurately describes the relevant legal realities—that the law firm acts as an agent of the Attorney General and stands in the shoes of the Attorney General in collecting money owed to the State. Because I would not apply the Fair Debt Collection Practices Act to state sovereign functions that Congress has not regulated and would not prohibit conduct that Congress has not banned, I must respectfully dissent.

## I.

The Fair Debt Collection Practices Act prohibits debt collectors from using "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Mindful of the sovereign authority of the Federal Government and the States to determine how, when, and through whom to collect government debts, the Act exempts "any officer of . . . the United States or any State to the extent that" debt collection ranks among "his official duties." 15 U.S.C. § 1692a(6)(C). The Dictionary Act defines "officer" as "any person authorized by law to perform the duties of the office." 1 U.S.C. § 1. Outside counsel hired to handle governmental duties fit that definition to a tee.

Begin with the phrase "authorized by law." To "authorize" is "[t]o give legal authority," "to empower," or "to sanction." *Black's Law Dictionary* (10th ed. 2014). That is what Ohio's special-counsel statute does. It empowers the Attorney General to "appoint special counsel to represent the state" in connection with its debts, and it permits any action those private lawyers take when they invoke their attorney-general-given authority. Ohio Rev. Code § 109.08. But for the statute, the Attorney General has no power to hire private lawyers as contractors, and private lawyers have no power to speak on his (and by extension the State's) behalf. Section 109.08, to wrap up, is a "law" that "authorize[s]" special counsel to act.

Now consider the other key phrase: "the duties of the office." An "office" is a "position whose occupant has legal authority to exercise a government's sovereign power for a fixed period." *Black's Law Dictionary* (10th ed. 2014). Special counsel fit this bill as well. They serve one-year renewable terms in a position created and empowered by statute. In their hands rests nothing less than a portion of the Attorney General's sovereign power to "enforce" the civil code the Ohio legislature has crafted—"one of the quintessential functions of a State"—by in this

instance collecting money due the State. *Diamond v. Charles*, 476 U.S. 54, 65 (1986); *see Associated Builders & Contractors v. Perry*, 16 F.3d 688, 692 (6th Cir. 1994). That may explain why, after Georgia lost *Chisholm* before the Supreme Court and was forced to come to federal court to defend debt-collection efforts against it, the Supreme Court proceeded to lose *Chisholm* before the People. *See* U.S. Const. amend. XI. These are quintessentially sovereign functions concerning the People's money. Special counsel hired to perform core sovereign functions count as "officers" exempt from the Fair Debt Collection Practices Act's sweep.

Even if one thinks that the Dictionary Act's definition of "officer" is ambiguous in this context, the exemption still applies. When Congress purports to regulate core state functions, it must do so unambiguously. *Gregory*, 501 U.S. at 470. The *Gregory* clear-statement admonition bars courts from construing ambiguous federal statutes to "trench on the States' arrangements for conducting their own governments." *Nixon v. Mo. Mun. League*, 541 U.S. 125, 140 (2004). "If Congress intend[s] to recalibrate state and federal power in an area that has traditionally been the province of state government," it must be clear in doing so. *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 567 (6th Cir. 2013) (en banc).

Who can deny that plaintiffs' interpretation of "officer" "trench[es] on the States' arrangements for conducting their own governments"? *Nixon*, 541 U.S. at 140. The States' sovereign authority gives them power to structure their legal departments as they please, and their "varied" and "pragmatic" approaches have produced a "staggering[ly] divers[e]" array of governance arrangements. *Avery v. Midland Cnty.*, 390 U.S. 474, 482–83 (1968). As is its sovereign right, Ohio has empowered its Attorney General to deputize third parties to shoulder some of his duties. He may appoint special counsel to "represent the state in civil actions, criminal prosecutions, or other proceedings in which the state is a party," Ohio Rev. Code § 109.07; to "act as attorney at law in any antitrust case" for the State and its residents, *id.* § 109.81; to "exercise all rights, privileges, and powers of prosecuting attorneys" in organized-crime cases, *id.* § 109.83; to "initiate and prosecute" violations of Ohio's workers compensation laws, *id.* § 109.84—and to "represent the state in connection with all claims of whatsoever nature which are certified to the attorney general for collection," *id.* § 109.08.

Nor does Ohio stand alone in this regard. *Every* State has delegated at least some of its debt-collection power to a non-State body. Sometimes that is the federal government, which in fiscal year 2013 collected more than $3 billion in delinquent debts on behalf of all fifty States. U.S. Dep't of the Treasury, *Fiscal Year 2013 Annual Report to the States: Treasury Offset Program Delinquent Debt Collections* 4 (2014), *available at* http://goo.gl/6O70u1; *see* 31 C.F.R. § 285.8. But other times that is a private entity. *See, e.g.*, Idaho Code Ann. § 67-2358(1); Or. Rev. Stat. § 293.231; Wash. Rev. Code § 19.16.500. One State's collections-assignment scheme bears more than a passing resemblance to Ohio's. California's Franchise Tax Board hires private contractors to collect debts on the State's behalf and authorizes them to "refer" debts "for litigation by [their] legal representatives in the name of the Franchise Tax Board" itself. Cal. Rev. & Tax Code § 19376(b). Interpreting the Fair Debt Collection Practices Act to regulate special counsel's activities undermines the State's decision to allocate law enforcement responsibilities between the Attorney General and his agents however the State sees fit. Absent a clear congressional directive, federal courts have no license to interfere with that choice.

Plaintiffs, notably, concede that "[t]he term 'officer' is ambiguous" and "open to multiple[] yet reasonable interpretations." Reply Br. at 5. That should be the end of this case. Their inability to argue that the statute is unambiguous *in their favor* means the *Gregory* clear-statement rule answers the question presented: "officers" includes special counsel authorized by the Attorney General to handle specific government functions, including the collection of the State's debts.

Plaintiffs offer several contrary arguments, all unpersuasive. *First*, they raise a canon of their own: Remedial statutes must be construed liberally. *See Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 559 (6th Cir. 2006). But we know that canon does not trump the *Gregory* clear-statement rule because *Gregory* itself involved a remedial statute, the Age Discrimination in Employment Act, and the Supreme Court insisted on a clear statement all the same.

*Second*, plaintiffs seek solace in two circuit court decisions holding that independent contractors cannot be officers: *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000), and *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260 (9th Cir. 1996). Neither case helps them. In *Pollice*, a municipal government *sold* its debts to a debt collector, 225 F.3d

at 389, eliminating the possibility that the collector was somehow an officer of the government in collecting the debt *for the government*. And in *Brannan*, the collector and not the government owned the debt in the first place. 94 F.3d at 1262. In this case, by contrast, the State of Ohio remains the ultimate creditor and thus its agents—special counsel—collect the debts on the State's behalf.

*Third*, plaintiffs argue that Congress could not have intended the state-officer exception to include special counsel because the Fair Debt Collection Practices Act has a separate provision giving the State an out: It may ask the federal Consumer Financial Protection Bureau to exempt special counsel from the Act's requirements. 15 U.S.C. § 1692o. That misunderstands how this relief valve functions. The Act permits the Bureau to exempt "any class of debt collection practices" subjected by state law to "substantially similar" consumer-protection requirements. *Id.* The relevant question is whether state law regulates a certain debt-collection *practice* as stringently as federal law, not whether the debt collectors carrying on that practice are "substantially similar" to *entities* the Act exempts. At any rate, the premise of this argument is false. Plaintiffs have not argued, nor have we found any indication, that the State's consumer-protection law regulates the Attorney General's use of his own letterhead.

*Fourth*, plaintiffs argue that Ohio does not treat special counsel as state officers under its own law for some purposes. But the question at hand is how the federal Fair Debt Collection Practices Act treats "officers," not how state law treats the term for some purposes. The only relevant state law question is whether the state law duties of special counsel satisfy the federal definition of "officer." They do. Even if state law definitions of "officer" *were* relevant, plaintiffs mischaracterize how Ohio uses the term for *this* purpose: debt collection. The state statute regulating collection agencies defines such agencies as persons "who, for compensation, . . . offer[] services to collect an alleged debt asserted to be owed to another." Ohio Rev. Code § 1319.12(A)(1). Just like its federal counterpart, it exempts "[a]ny public officer" from its terms, *id.* § 1319.12(A)(2)(e)—and Ohio courts define "officer" the same way the Dictionary Act does. "[T]he chief and most decisive characteristic of a public office," the Ohio Supreme Court has held, "is determined by the quality of the duties with which the appointee is invested, and by the fact that such duties are conferred upon the appointee by law." *Engel v. Univ. of Toledo Coll.*

*of Med.*, 957 N.E.2d 764, 768 (Ohio 2011).  Ohio courts applying that definition accord no significance to the fact that a particular appointee may *also* be an independent contractor whose statutorily prescribed duties are fleshed out by the terms of his contract.  *See Solowitch v. Bennett*, 456 N.E.2d 562, 566 (Ohio Ct. App. 1982).  All of this explains why Ohio regards even the Deputy Registrar of the Bureau of Motor Vehicles, an independent contractor under the statute, as an "officer."  *Id.*

*Finally*, plaintiffs urge us to limit the Dictionary Act's definition because every state contractor would otherwise qualify as an "officer."  Any such slope is not as steep or as slick as they imagine.  The Ohio Facilities Construction Commission, cited by the majority in support of plaintiffs' view, proves the point:  There is nothing "sovereign" about the power to "construct[] and repair" a state agency's buildings, Ohio Rev. Code § 123.21, and sovereign power remains a precondition of officer status.    In other respects, the Dictionary Act's definition reads expansively because the definition *is* expansive.  Congress knows how to supersede a Dictionary Act default and has done so before:  Title 5 defines "officer" as someone (1) "required by law to be appointed in the civil service" by the President, certain agency heads, or a federal court; (2) "engaged in the performance of a Federal function"; and (3) "supervis[ed]" by a limited group of people.  5 U.S.C. § 2104.  Other restrictive definitions exist.  To qualify as a principal officer under the National Constitution, a person must be presidentially appointed and senatorially approved, swear an oath of office, and "exercis[e] significant authority pursuant to the laws of the United States."  *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 506 & n.9 (2010).  Congress did not deviate from the Dictionary Act when drafting the Fair Debt Collection Practices Act.  I would respect that choice and *Gregory*'s command that any ambiguity in the statute be construed in a way that does not interfere with how the State chooses to handle this core state function:  debt collection.

## II.

Even if the Fair Debt Collection Practices Act somehow covered debt-collection efforts by special counsel on behalf of the State, plaintiffs face another problem.  The Act does not transform the special counsels' use of the Ohio Attorney General's stationery into "false," "deceptive," or "misleading" actions under the statute any more than it would do the same if a

special counsel listed his or her name and firm under the Ohio Attorney General's name and address in a brief filed in this Court.

Recall the distribution of authority the special-counsel statute creates. Special counsel *are* the Attorney General's agents, authorized to stand in his place when collecting Ohio debts. As their contracts makes clear, they "provide legal services" on the Attorney General's behalf. R. 48-8 at 2. They may file and settle lawsuits with the Attorney General's permission. *Id.* at 5. The Collections Enforcement Section of the Office of the Attorney General assigns them specific debts to collect, then audits their performance. *Id.* at 3. The State does not sell the debts to special counsel, and they thus remain debts of the State. *Id.* at 6. As a consequence, special counsel are no different from assistant attorneys general paid to recover the State's money. That is how the Attorney General treats them. Assistant attorneys general "frequently" help special counsel draft pleadings, and sometimes sign on as co-counsel when a "particularly sensitive or complex" case demands it. *See* R. 24 at 21. Assistant attorneys general even stand in for special counsel (and special counsel for assistant attorneys general) when illness strikes or when distance makes travel impractical, even if the replacement has not been formally assigned to the debt. *Id.*; *see Shapiro v. Ohio Attorney Gen.*, 725 N.E.2d 1232, 1235 (Ohio Ct. App. 1999). It thus should come as no surprise that the Attorney General *requires* his debt-collection agents to use his official stationery. *See* R. 5 at 2. In this context, an agent who uses his principal's letterhead speaks the truth; he does not say anything false or misleading.

Consider the plaintiffs' theory of liability under 15 U.S.C. § 1692e(9). That provision prohibits the use of letters that "simulate[]" or are "falsely represented" to be "document[s] authorized, issued, or approved by" a State, or that "create[] a false impression as to [their] source, authorization, or approval." *Id.* A document with the Attorney General's letterhead, it is no doubt true, gives the impression that it comes from the Attorney General. But special counsel's dunning letters *do* come from the Attorney General. And plaintiffs have not produced any evidence that *these* special counsel exceeded the scope of their debt-collection authority under state law or the Attorney General's guidance.

Now consider plaintiffs' theory of liability under 15 U.S.C. § 1692e(14). That provision prohibits debt collectors from using "any business, company, or organization name other than the

true name of the debt collector's business, company, or organization."  Plaintiffs argue that, by employing the Attorney General's letterhead, special counsel "use" a "name other than the true name" of their law firms.  Wrong again.  Nothing about § 1692e(14) prohibits special counsel from affiliating themselves with the Office of the Ohio Attorney General.  Although the statute never says what a "true name" is, its import is straightforward:  A debt collector may not lie about his institutional affiliation.  As the Federal Trade Commission, one of the federal agencies responsible for enforcing the Act, recognizes, a debt collector may use multiple names in his various affairs as long as the names "do[] not misrepresent his identity or deceive the consumer." Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,107 (Dec. 13, 1988).  Here too the principal-agent relationship resolves the dispute.  Special counsel may lawfully use the Attorney General's letterhead because, as his agents, they represent him in debt-related affairs.

An analogy makes the point.  Many insurance agents are independent contractors. *See Weary v. Cochran*, 377 F.3d 522, 526 (6th Cir. 2004).  Some insurance agents are themselves separately incorporated.  But no one bats an eye when an insurance agent working for John Doe Insurance Agency, Inc. uses Nationwide Mutual Insurance Co. letterhead when selling Nationwide insurance products on Nationwide's behalf.  Just as there is nothing remotely untrue or misleading about using that letterhead, there is nothing remotely untrue or misleading about using this letterhead.

Plaintiffs offer several theories to resist this conclusion.  Theory one:  The letterhead misrepresents a special counsel's authority because state law purportedly prohibits special counsel from using the Attorney General's letterhead to collect these debts.  But plaintiffs offer no caselaw to that effect.  And Ohio's top legal official, the Attorney General, has said otherwise.  He requires *all* special counsel performing debt collection on his behalf to use his letterhead, whether in the context of unpaid taxes or other state debts.  *See* R. 5 at 2.  Notably, plaintiffs *do not* argue that the Attorney General has violated state law.  *See* R. 31 at 3 (affirmatively waiving the argument).  In this setting, a private law firm cannot plausibly be tagged with liability under the Act for false or misleading acts when it *complies* with the directions of the State's top legal official about a matter of state law.  The only thing that could

be false or misleading in this setting would be to send out dunning letters on the *law firm's stationery*.

Theory two:  The letterhead tricks debtors into believing they are being contacted by the Attorney General when they are in fact being contacted by someone else.  That does not make sense either.  Special counsel *are* the Attorney General when it comes to debt collection, and as his agents possess just as much authority to invoke his name as an assistant attorney general or another of his employees.  It makes no difference that special counsel are deemed independent contractors by contract, thanks to a basic principle of agency law:  A person need not be a principal's employee to be that principal's agent.  "[N]othing about the title independent contractor invariably precludes someone from being an agent under appropriate circumstances." *United States v. Hudson*, 491 F.3d 590, 595 (6th Cir. 2008) (citing *Restatement (Second) of Agency* § 2 cmt. b (1958)).  For that inquiry, it does not matter whether special counsel work in the Attorney General's office building or their own office building, whether they use the Attorney General's computers or their own computers, whether they are insured by the Attorney General or by their own policies.  The only question that matters is whether they exercise the Attorney General's debt-collection powers as his agents.  They do.

Theory three:  The letterhead confuses debtors into thinking that debts owed to the State of Ohio are more significant than a debt owed to a private entity such as a bank.  Plaintiffs do not spell out the source of this alleged intimidation, but a few possibilities come to mind.  One is the institutional affiliation printed on the letterhead:  "Mike DeWine, Ohio Attorney General."  *See* Appendix.  But that is the same institutional affiliation conveyed by the letters' signature blocks. *E.g.*, *id.* ("Outside Counsel for the Attorney General's Office.").  Plaintiffs conceded at argument that the Act does not bar special counsel from referencing their job title in their signatures.  The letterhead's content thus cannot supply a cognizable basis for this claim.

Another possibility turns on the creditor itself:  the State of Ohio.  An official communication from the State could intimidate an unsophisticated consumer into thinking that the consequences of failing to pay this debt (as opposed to private debts) are more severe.  But that fear is justified and anything but unsophisticated.  From the perspective of a consumer, debts owed to Ohio (and other governments) *do* have consequences not shared by debts owed to

private parties.  For example, the State may deduct what it is due from a taxpayer's refund, whether the refund comes from the Federal Government, the State, or a local government.  *See, e.g.*, Ohio Rev. Code § 5703.77(D) (credit account balances); *id.* § 5726.31 (financial institutions tax); *id.* § 5747.12 (income tax); 31 C.F.R. § 285.8 (federal tax).  That is not true with respect to private debts.  Debts owed to governments also take priority over most private debts in state probate proceedings.  *See* Ohio Rev. Code § 2117.25(A).  The special consequences of state debts explain why the Act bars debt collectors *unaffiliated* with a State from using the State's name to scare debtors into paying.  When the State itself is doing the demanding, however, nothing about the resulting fear misleads.  And when special counsel communicate with debtors, they stand in the State's shoes, just as the Attorney General would stand in the State's shoes if he pursued delinquent debtors himself.  The only thing misleading in this setting would be to suggest (through a law firm letterhead alone) that this *was not a state debt*.

The last possibility is that the use of the Attorney General's letterhead evokes *un*justified fears:  fear of the Attorney General "stop[ping] or delay[ing]" a pending bankruptcy, R. 48-2 at 1, or fear of being charged with a crime, R. 48-3 at 2.  But neither of the milquetoast letters in the record threatens criminal prosecution, civil penalties, or any action whatsoever.  *See* Appendix.  The letter to Pamela Gillie simply invites her to "make arrangements to pay" if she cannot satisfy her obligation in full, while the letter to Hazel Meadows simply discloses her current balance owed.  *Id.*  Not even the least sophisticated consumer could infer anything from these letters other than the reality that these were indeed state debts.

Theory four:  The letterhead misleads debtors into thinking that special counsel are *not* associated with the State when in fact they are.  True, the Office of the Attorney General has received calls from debtors worried that a special-counsel dunning letter is a scam.  But that implies the letters do not say *enough* about how tightly knit the Attorney General and special counsel are—an implication that contradicts plaintiffs' entire theory of liability.

All of this may explain why the only circuit to confront an analogous governmental debt-collection practice has rejected plaintiffs' argument.  *See Heredia v. Green*, 667 F.2d 392 (3d Cir. 1981).  In *Heredia*, the Philadelphia Municipal Court appointed defendant Edward Green as a "landlord and tenant officer," as state law authorized it to do, and ordered him to deliver

delinquency notices on the Court's behalf.  *Id.* at 393, 395.  Recognizing Green as an "officer," the Third Circuit turned aside plaintiffs' claims under the Fair Debt Collection Practices Act's officer exemption.  To hold otherwise would place Green "in the anomalous position of being exposed to personal monetary liability for deceptively giving the impression that he was acting as an officer of the court despite the fact that his actions . . . had indeed been authorized by that court."  *Id.* at 396 (Stern, J., concurring).  As for *Peter v. GC Servs., L.P.*, 310 F.3d 344 (5th Cir. 2002), the Fifth Circuit never considered the relationship between the government and the defendants and thus never considered the agency question presented here.

The majority seeing things differently, I respectfully dissent.

**Appendix**



Mike DeWine
Ohio Attorney General

**EXHIBIT A1**

May 24, 2012

Pamela Gillie 181355
2392 ROSECREST ST
Grove City, OH 43123-8464

Reference: 8460030
Balance: $2227.46

Dear Sir/Madam,

You have chosen to ignore repeated attempts to resolving the referenced 8460030 medical claim. If you cannot make immediate full payment call DENISE HALL at Eric A. Jones, L.L.C., 614-545-9997 at my office to make arrangements to pay this debt.

**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ALL INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Sincerely,

*Eric A. Jones*

Eric A. Jones
Outside Counsel for the
Attorney General's Office
Telephone: 614-545-9998
Fax: 614-224-9300

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
RETURN THIS PORTION WITH YOUR PAYMENT

SEND PAYMENT TO:

IF PAYING BY CREDIT CARD, CHECK BOX AND PLEASE FILL OUT BELOW

☐ VISA    ☐ MasterCard

Card Number _____

V-Code _____ (3 Digit Code on back of card)   Exp. Date _____

Law Office of Eric A. Jones, L.L.C.        Amt. Paid _____
580 South High Street, Suite 100
Columbus, OH 43215

Print Name _____

Signature _____

MED3-1

**EXHIBIT B1**



**Office of the Ohio Attorney General**
Collections Enforcement Section

July 20, 2012

HAZEL MEADOWS
587 SOUTH HARRIS AVENUE
COLUMBUS OH 43204

> RE:  STATE OF OHIO - UNIVERSITY OF AKRON
> v.  HAZEL MEADOWS
> Amount of Claim: $2,581.07
> *Our File No: 37430.001

Sir/Madam:

Per your request, this is a letter with the current balance owed for your University of Akron loan that has been placed with the Ohio Attorney General. Feel free to contact me at 614-221-2073 should you have any further questions.

Very truly yours,

Sarah Sheriff
Wiles, Boyle, Burkholder & Bringardner Co., LPA
300 Spruce Street
Columbus, Ohio 43215
Special Counsel to the Attorney General for the State of Ohio

**NOTICE -** This is an attempt to collect a debt. Any information that we obtain will be used for that purpose. We will assume this debt to be valid unless you dispute the validity of all or any part of it within 30 days of receipt of this letter. If you notify us in writing that you dispute all or part of the debt, we will obtain and send to you verification of the debt or a copy of the judgment against you. Upon written request within 30 days after receipt of this notice, we will provide you with the name and address of the original creditor, if different from the creditor named above. We are debt collectors.

**\* IMPORTANT - PLEASE REFER TO OUR FILE NO. IN ALL COMMUNICATION**